**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **JAMES M. ROYSDON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **NO. 3:23-cv-00779** |
| | ) | |
| **JERMARIS PORTER, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

# MEMORANDUM OPINION

Pending in this *pro se* and *in forma pauperis* prisoner civil action is the motion for summary judgment filed by CoreCivic, Inc., Trousdale County, Tennessee, Tari Crawford, Jermaris Porter, Delores Stokes, and Vincent Vantell. (Doc. No. 65). The motion is opposed by James M. Roysdon, (Doc. No. 83), to which Defendants have filed a reply. (Doc. No. 87). The motion is ripe for decision, so the Court vacates the referral. (Doc. No. 10). For the reasons that follow, the motion will be granted on Plaintiff's 42 U.S.C. 1983 claim and the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claim. This case will be dismissed.

## I. PROCEDURAL BACKGROUND

Roysdon is an inmate of the Tennessee Department of Correction ("TDOC") currently confined at the Bledsoe County Correctional Complex ("BCCC") in Pikeville, Tennessee. He filed this lawsuit alleging violations of his Eighth Amendment rights. (Doc. No. 2). He subsequently filed an amended complaint, reasserting his constitutional claim and raising a claim under state law. (Doc. No. 16). Plaintiff's claims are based upon events that occurred in 2023 when he was confined at the Trousdale Turner Correctional Center ("TTCC").

Upon initial review, the Court directed that process issue to the only two defendants named in the complaint – TTCC Chief of Security Jermaris Porter ("Porter") and TTCC Case Manager

Delores Stokes ("Stokes") – on an Eighth Amendment claim that Porter and Stokes failed to take steps to protect Plaintiff from violence committed by other inmates at the TTCC. Subsequently, Plaintiff filed an amended complaint, adding a state law claim and adding several new Defendants to his Eighth Amendment claim: CoreCivic, Inc. ("CoreCivic"), a private corporation that operates TTCC; Trousdale County, Tennessee ("Trousdale County"); TTCC Classification Coordinator Tari Crawford ("Crawford"); TTCC Warden Vincent Vantell ("Vantell"); and, TDOC Commissioner Frank Strada ("Strada). (Doc. No. 16). In his amended complaint, Plaintiff expounds on the allegations against Porter and Stokes and sets out new allegations of events occurring at the TTCC after May 2023 and after he had been moved to a segregated housing unit. *Id*. Strada was voluntarily dismissed from the case. (Doc. No. 52).

## II. FACTUAL ALLEGATIONS AND CLAIMS

On May 11 and 12, 2023, Plaintiff alleges that other inmates in his housing unit threatened him and his cellmate with violence and sexual assault after an incident involving commissary bags that had been passed out to inmates. Plaintiff reported the incident on the Prison Rape Elimination Act ("PREA") hotline. He also gave written notes to Porter and Stokes about the incident and about his desire to be placed in protective custody but that nothing was done. Plaintiff alleges that an inmate later motioned for him to come into the inmate's cell, which he did, and that inmate and another gang related inmate verbally abused him, told him that he owed them $500.00, and attempted to make him perform a sexual act on one of the inmates, which he did not do. Plaintiff contends that he called his wife and had her transfer $40.00 to someone associated with the inmates. He explained to his wife what occurred and that she also called the PREA hotline to no avail.[1]

[1] Plaintiff's factual allegations about these events are somewhat contradictory as to the chronology of events. He alleges that the sexual assault occurred on the morning of May 12, 2023, *see* Amended Complaint at ¶ 33, (Doc. No. 16), but alleges that he gave notes about the sexual assault to Porter on

Plaintiff asserts that on May 14, 2023, he met with prison officials about the incidents and calls to the PREA hotline but that the officials did not believe him and returned him to his housing unit. Plaintiff refused the cell assignment and was then placed in the Alpha Unit, which houses inmates in segregation and in protective custody. He alleges that he remained at risk of violence from other inmates because the unit housed inmates who were gang members and because the inmates were able to "pop" the locks on their cells and exit their cells. Plaintiff contends inmates threatened him with violence, although he does not allege that any violence against him occurred. Plaintiff further alleges that he was so fearful of being attacked that he made several suicide attempts, including attempting to hang himself and swallowing razor blades. As a result, he was housed in the medical and mental health unit. Plaintiff's family made numerous complaints to prison officials about his situation and that he spoke to prison officials at various times but he was never placed in protective custody or transferred to another institution.[2]

Plaintiff also alleges that the TTCC is chronically understaffed, that gang inmates are a constant threat to other inmates, and that CoreCivic and the named prison officials have failed to ensure the safety of inmates despite their knowledge of the unsafe environment at the TTCC. He further contends that there are numerous reports and audits that evidence systemic problems at the TTCC regarding staffing issues and inmate safety. He also sets out multiple allegations of issues, lawsuits, and audits pertaining to CoreCivic facilities in other states. Plaintiff alleges that CoreCivic's policies permitted and caused the inmate safety issues at the TTCC and that Vantell and Crawford failed to take any steps to rectify the problems. He further contends that Trousdale County has contracted with TDOC to operate the TTCC and has delegated that responsibility to CoreCivic

---

the evening of May 11, 2023. *Id*. at ¶ 38.

[2] The Court notes that Plaintiff filed a change of address notice, indicating that he had been

but has failed to oversee CoreCivic's operation of the TTCC.

Plaintiff asserts his Eighth Amendment right to personal safety and that he is entitled to relief from all Defendants under Section 1983. *See* Amended Complaint at Count 1, at 25-29 (Doc. No. 16). He maintains that TDOC has a legal duty under the Eighth Amendment and under the Tennessee Constitution to provide him with a reasonably safe living environment while he is confined in prison. He also relies on up Tenn. Code Ann. 1-3-121 to seek declaratory and injunctive relief.

## III. MOTION FOR SUMMARY JUDGMENT AND RESPONSE

Defendants seek summary judgment under Rule 56 of the Federal Rules of Civil Procedure. They support their motion with the declarations and exhibits. Crawford (Doc. No. 69), Porter (Doc. No. 70), Stokes (Doc. No. 71), Vantell (Doc. No. 73), and TTCC Grievance Coordinator Cedric Tripp (Doc. No. 72). Defendants argue that Plaintiff failed to properly exhaust his administrative remedies under the Prison Litigation Reform Act ("PLRA") prior to bringing his lawsuit. Defendants then attack the merits of Plaintiff's Eighth Amendment claim.

Plaintiff responds in opposition (Doc. No. 83) and supports his response with his own affidavit (Doc. No. 85), the declarations of his cellmate's wife, his fiancé, and his sister (Docket Entry Nos. 86 and 83-3), and copies of letters, various prison documents, and a prison grievance that he filed (Doc. Nos. 83-2 and 83-4 through 83-8). Based upon a grievance about an incident on June 14, 2023, Plaintiff argues that he pursued this grievance through all levels of the grievance process and that his grievance included sufficient allegations about the events at issue to deem his claims against all Defendants exhausted. Plaintiff further contends that his Eighth Amendment claim is supported with evidence that he alerted the Defendants to a real and significant risk to his safety

---

transferred from the TTCC on or about January 5, 2024. *See* Doc. No. 17.

from the other inmates but that no action was taken to protect him from those risks.

## IV. STANDARD OF REVIEW

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a) of the Federal Rules of Civil Procedure. *See also* Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Peffer v. Stephens, 880 F.3d 256, 262 (6th Cir. 2018) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The moving party has the burden of showing the absence of genuine factual disputes from which a reasonable jury could return a verdict for the non-moving party. Anderson, at 249-50. "The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the non-moving party's case." Rodgers v. Banks, 344 F.3d 587, 595 (6th Cir. 2003) (citation and quotations omitted). "In response, the nonmoving party must present 'significant probative evidence' that will reveal that there is more than 'some metaphysical doubt as to the material facts.'" Miller v. Maddox, 866 F.3d 386, 389 (6th Cir. 2017) (quoting Moore v. Philip Morris Cos., Inc., 8 F.3d 335, 340 (6th Cir. 1993)). The party opposing the motion for summary judgment may not rely solely on the pleadings but must present evidence supporting the claims asserted by the party. Banks v. Wolfe Cnty. Bd. of Educ., 330 F.3d 888, 892 (6th Cir. 2003). In other words, to defeat summary judgment, the party opposing the motion must present affirmative evidence to support his or her position; a mere "scintilla of evidence" is insufficient. Bell v. Ohio State Univ., 351 F.3d 240, 247 (6th Cir. 2003) (*quoting* Anderson, 477 U.S. at 252). In the end, there must be evidence upon which the trier of fact could reasonably find in favor of the non-moving party. Rodgers, 344 F.3d at 595.

In considering whether summary judgment is appropriate, the Court must "look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial." Sowards v. Loudon Cnty., 203 F.3d 426, 431 (6th Cir.), *cert. denied*, 531 U.S. 875 (2000). In doing so, the Court must view the evidence and all inferences drawn from underlying facts "in the light most favorable to the party opposing the motion." *See* Matsushita Elec. Indus. Co. v. Zenith Radio Corp., *Ltd.*, 475 U.S. 574, 587 (1986).

## V. ANALYSIS

Pursuant to 42 U.S.C. § 1997e(a) of the PLRA, a prisoner challenging prison conditions under 42 U.S.C. § 1983 must first exhaust all administrative remedies before filing a lawsuit. Ross v. Blake, 578 U.S. 632, 635 (2016); Porter v. Nussle, 534 U.S. 516, 524 (2002). The prisoner plaintiff must present his grievance through "one complete round" or through all the steps of the administrative grievance procedure in order to satisfy the exhaustion requirement. Thomas v. Woolum, 337 F.3d 720, 733 (6th Cir. 2003), *abrogated on other grounds*, Woodford v. Ngo, 548 U.S. 81 (2006); Hartsfield v. Vidor, 199 F.3d 305, 306 (6th Cir. 1999). The failure to satisfy the exhaustion requirement is an affirmative defense that a defendant must raise and prove. *Jones v. Bock*, 549 U.S. 199, 216 (2007). Once the defense is raised and supported, the burden is on the prisoner plaintiff to present significant probative evidence showing that he has complied with the PLRA's requirement of exhaustion. *See* Napier v. Laurel Cnty., Ky., 636 F.3d 218, 225 (6th Cir. 2011). If the plaintiff fails to present such evidence, the action must be dismissed without prejudice. Bell v. Kontech, 450 F.3d 651, 653 n.4 (6th Cir. 2006) ("It is well established ... that the appropriate disposition of an unexhausted claim under the PLRA is dismissal without prejudice.").

The Court finds that Plaintiff has not satisfied the PLRA's exhaustion requirement for his Section 1983 claim prior to filing this lawsuit. His failure to do so is dispositive of his motion.

The facts surrounding Plaintiff's use of the grievance process at the TTCC are essentially undisputed. There is a three-step administrative grievance process at the TTCC that provides inmates with the opportunity to file a written grievance with lower level officials and then the opportunity to appeal resolution of the grievance to the warden and then file a final appeal to the TDOC Commissioner's Office. Declaration of Tripp at ¶¶ 3-4. (Doc. No. 68-11).

In the aftermath of the events of May 2023, Plaintiff used this grievance process to submit a lengthy grievance dated June 14, 2023, that was accepted by the grievance clerk on July 20, 2023, and then processed with a supervisor's response and a grievance committee's response. Grievance Copy (Doc. No. 83-7) at 2-10. Plaintiff unsuccessfully appealed to the Warden on August 14, 2023, and then to the Commissioner's Office on August 16, 2023. *Id*. at 9. The grievance was ultimately denied on August 22, 2023, when the TDOC Assistant Commissioner concurred with the Warden. *Id.* at 11. Defendants concede that Plaintiff thus pursued this grievance appropriately through all three levels of the grievance process. Declaration of Tripp at ¶ 5. (Doc. No. 68-11).

Although Plaintiff clearly used the available grievance process, he nonetheless failed to comply with the PLRA's exhaustion requirement. First and foremost, it is undisputed that Plaintiff's grievance was still pending and that the grievance process had not been fully completed at the time he filed his lawsuit on July 24, 2023. At the time the lawsuit was filed, the first step of the grievance process had not yet even been completed, a fact which Plaintiff himself notes in his original complaint, stating that he was "still waiting on a response" to the grievance that he filed. Complaint at 2. (Doc. No. 2). Even though Plaintiff eventually completed the grievance process by pursuing his grievance through the final level of appeal, it undisputed that this occurred only after the lawsuit was filed. The Sixth Circuit precedent is clear that the PLRA's exhaustion requirement imposes a "precondition to filing an action in federal court," meaning that a prisoner "may not exhaust

administrative remedies during the pendency of the federal suit." Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999). Margosian v. Martinson, 2025 WL 4692963, at *5 (6th Cir. Dec. 23, 2025) ("prisoner must follow the grievance procedure to its conclusion—resolution of a Step III appeal—prior to filing suit in federal court."); Fraley v. Ohio Dep't of Corr., 2018 WL 2979902, at * 2 (6th Cir. Mar. 22, 2018) (holding that the grievance process must be completed before filing the lawsuit; belated exhaustion while the lawsuit is pending does not satisfy the exhaustion requirement); Trivette v. Tennessee Dep't of Correction, 739 F.Supp.3d 663, 696 (M.D. Tenn. 2024); Bostic v. Tennessee Dep't of Corr., No. 3:18-CV-00562, 2020 WL 525910, at *2 (M.D. Tenn. Feb. 3, 2020) (Richardson, J.) (grievance against the defendant did not meet the exhaustion requirement because it was filed after the plaintiff moved to add the defendant to the case). Plaintiff's Section 1983 claim must be dismissed without prejudice for non-compliance with the PLRA's exhaustion requirement.

Second, Plaintiff's grievance focus on the events of May 11-12, 2023, when Defendants Stokes and Porter failed to assist him, and failed to appropriately respond to calls he and his family made to the PREA hotline. The grievance did not raise many of the matters set out in his Amended Complaint, such as his complaints about institutional safety and staffing issues at the TTCC. Further, the grievance, having been filed on June 14, 2023, could not have addressed any factual matters occurring in the summer and fall of 2023 after the grievance was filed. Thus, the grievance did not and could not exhaust his claims against Vantell, Crawford, and CoreCivic. Cook v. Caruso, 531 F.App'x 554, 562 (6th Cir. 2013) (ruling that an inmate had not properly exhausted his administrative remedies because his first grievance did not address the factual issue that was raised in the lawsuit); Sedore v. Washington, 2024 WL 1376477, at *5 (E.D. Mich. Mar. 31, 2024) ("To exhaust a claim under the PLRA, an incarcerated person's grievance claim must match the issue(s) found in that individual's § 1983 complaint.").

Because compliance with the exhaustion requirement is mandatory, because Plaintiff offers no basis upon which to excuse his failure to exhaust prior to filing this lawsuit, and because genuine issues of material fact do not exist as to this defense, his federal claim brought under Section 1983 must be dismissed. Hartsfield, 199 F.3d at 310. Plaintiff's failure to comply with the PLRA's exhaustion requirement is dispositive of his Section 1983 claim without regard to the merits of the claim.

Upon the dismissal of Plaintiff's federal claim, the only claim remaining in this case is his state law claim against Trousdale County. This claim is not subject to the PLRA's exhaustion requirement. Pierce v. Rowland, 2021 WL 3929549, at *6 (6th Cir. Sept. 2, 2021). However, the Court may decline to hear this claim. 28 U.S.C. § 1367(a) provides that:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy ….

*Id*. The Court has discretion to retain supplemental jurisdiction over state law claims even after dismissing all claims over which the Court has original jurisdiction. 28 U.S.C. § 1367(c)(3) (providing that "district courts may decline to exercise supplemental jurisdiction" in such circumstances). The general rule is that where a district court has dismissed all federal claims prior to trial, the court should dismiss any remaining state-law claims that are before the Court only through supplemental jurisdiction. Packard v. Farmers Ins. Co. of Columbus Inc., 423 F.App'x 580, 584 (6th Cir. 2011) ("[T]his Court applies a strong presumption against the exercise of supplemental jurisdiction once federal claims have been dismissed."); Experimental Holdings, Inc. v. Farris, 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims."). Lyndon's LLC v. City of Detroit, Michigan, 2024 WL 3427176, at *3 (6th Cir. 2024) ("Both federal statutory provisions and our precedent... permit [and]

encourage district courts to decline to exercise supplemental jurisdiction over state law claims that are left without an anchor when their associated federal claims are dismissed.") (internal citations omitted). Here, there is no apparent basis to deviate from the general rule. Accordingly, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claim. This claim will be dismissed without prejudice.

**VI. CONCLUSION**

On the basis of the foregoing, the motion for summary judgment (Doc. No. 65) filed by Defendants CoreCivic, Inc., Trousdale County, Tennessee, Tari Crawford, Jermaris Porter, Delores Stokes, and Vincent Vantell will be granted. Plaintiff's Section 1983 claim is dismissed without prejudice because of his failure to comply with the exhaustion requirement of the Prison Litigation Reform Act. The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claim, which will be dismissed without prejudice.

An appropriate order will enter.

Waverly D. Crenshaw, Jr
WAVERLY D. CRENSHAW, JR
UNITED STATES DISTRICT JUDGE